There are some in question, number 06, 15, 69. Channeling Mills against Kraft Foods. I won't have to wait for Council to be ready now. Thank you. Thank you.  Thank you. Thank you. Thank you. Thank you, Your Honor. Good afternoon. May it please the Court. Kraft claims the benefit of a covenant not to sue. That covenant not to sue has its genesis in the agreement between General Mills and a company called Fartel. And that covenant not to sue is found as appendix B to a settlement agreement that resolved this patent litigation. Kraft claims to be a successor to Fartel under that covenant not to sue. Kraft goes even further, claiming in this case that once a successor, always a successor. That's the foundation of their defense to our patent infringement case. That is wrong as a matter of law, and it is wrong as a matter of the facts under this case. You don't disagree that Kraft is a successor under the agreement? At one time, Your Honor. Up till what? I'm sorry? Up till Catterton. Up till Catterton, Kraft. Catterton destroyed the successor status of Kraft, because that's what you're arguing for. That's our argument for, yes. But you're not arguing that they didn't succeed to the agreement in the first instance? In the first instance, we can see that they, in fact, succeeded to the agreement, and that the way they succeeded to that agreement actually proves our point here. And the transaction with Catterton didn't breach the agreement. We can see that below, right? The transaction didn't breach any specific clause of the agreement, because there was nothing to stop Kraft from deciding to take what was Farley and parcel it off piece by piece for money, which is exactly what they did when they sold a piece to Kraft. Farley, instead of selling itself, lock, stock, and barrel to Kraft, Farley had said, you know, we're going to kind of go out of the candy business. We've got a couple of production runs for Christmas. We want to continue to make this stuff that we can make pursuant to the government's law to sue. But we're going to dispose of virtually all of our stuff in a kind of a breakup. We're going to sell half of our stuff to Kraft, half of our stuff to somebody else, and whatever. And we're going to keep, in essence, the covenant just for the period of time so we can sell off our inventory. That is asking a question. Well, what happened was that Farley would have broken itself up. Why wouldn't it have lost successor status, if you will? It very well might have. In fact, the question that arises as a result of your hypothetical is, how much of Farley need there be for someone down the road to claim that they're Farley? Or how much of Farley needs to be left if Farley would have done something under your hypothetical to retain the successor status? Do you know the answer to that? The answer to that is found by looking at the settlement agreement. Because the settlement agreement says in it that the agreement can be transferred, and the benefits and rights and obligations of the agreement can be transferred, if certain listed assets are transferred. And those listed assets are found in the settlement agreement, Your Honor. I believe it's in 8.4, which is on appendix page 487. And it's very clear that Farley must transfer its entire role, food, product, business, including without limitation, all assets, goods, goods, and trademarks, to the party to whom the rights and obligations are being assigned. Now, that doesn't identify the nature of the business in terms of any point in time or in terms of any level of activity, productivity. For example, the disagreement was signed toward the end of 1996, correct? Yes, it was signed on November 1996. So what would happen if Farley, just in the normal course of business subsequent to November of 1996, had a little bit of a downturn, pared back some of its manufacturing facilities, maybe decreased some of its sales, and at that point, two or three years after the agreement, signed its entire food, product, business. Would that still meet the terms of this agreement? Yes, and here's the reason why. The key time here, and I think it's explicit, at least implicit from this agreement, is at the time rights and obligations are attempting to be assigned. That's where the 8.4 says. So if you're looking at what time frame do you measure what's Farley's role, food, business, with respect to someone later claiming benefit of it, it's whatever that role, food, business was, provided there was in fact a role of food, business, at the time of the transfer. So isn't that what happened in this case, that at the time of the transfer, its entire food, product, business, all its assets, goods, and other trademarks were conveyed to Kraft? Correct. What difference does it make? If it doesn't make any difference before the transfer, why should it make a difference after? Because Kraft claims that it is a successor to Farley, but it in fact is Farley. And if what they do is they take Farley in 2001, and they become Farley, but later on decide, well, you know, there's a market out there, a part of what was the role of food, business, of Farley, the trademarks and the goodwill, for example. That's why I asked, when do you look to what it was that's transferred? If you're saying you look to the time of the transfer, then it seems to me it shouldn't make any difference. No, you only look to the initial transfer. In other words, Farley had the ability, because we cut a deal with Farley, that Farley could have sold some assets under a hypothetical business voucher, maybe they parceled off some assets, and they then could have sold whatever it was, it was Farley's role of food, business at that time, to Kraft. Kraft, however, can't come in and take those assets and decide to split them. Here's another way of asking the question. Whatever Kraft had, how much had to be left for them still to have the benefit of the successor status under the covenant not to sue? So you're saying in 8.48 where it says Farley must transfer its entire role of food product, that entire role of food product grows in time, right? Because I thought Judge Glenn was asking, what happens if Farley, shortly after this agreement, gets rid of half of its role of food business, just gets rid of half of it? If Farley gets rid of half of its role of food business, then could Farley nonetheless then make a transfer under 8.48 to Kraft, of everything that's left? Well, that question posed that way. The answer is Farley may be able to continue to obtain the benefit of the agreement, but nobody else could. Again, we have to come back to why. That's not the answer I thought. If Farley got rid of half of its business, the downturn, right? What if Kraft... Then how can its successor, how can it enjoy the covenant not to sue? Another variation on that question is, what if Kraft had sold every single piece of the business, but the covenant not to sue? Your argument is that successor means successor to the whole kit and the boodle, as opposed to successor to a piece of the firm. To be a successor, you have to be what the company was at their lot. Because otherwise, we could be in a situation where the current Farley, that is a company formed by Catterton, that has the trademark that was used to manufacture rolled product, what would stop them from going out, manufacturing rolled food product? We sue them, and they say, wait a minute, wait a minute. There's a covenant not to sue here. It's Appendix B. Here's what it says. Farley's off the hook, and its successor's off the hook. We're Farley. Our name's Farley. We have trademarks that are Farley. Our business looks just like the Farley that was in existence at the time General Mills did. I'm a little confused as to the interrelationship between 1.6, the agreement, and 8.4. 1.6 says every successor gets treated as Farley. So there were no 8.4 at all, I take it. The ordinary law of successorship, this seems to basically invoke the common law of successorship, would mean that anybody who qualified as a successor would enjoy the benefits of that agreement, correct? Kraft does not get... Before we hit Kraft, let's just make sure we're all on the same page here with respect to that legal proposition, correct? I don't think so, because that's not what gets Farley or anyone else off the hook. It's the covenant not to sue that gets one off the hook. What this 1.6 says is we're defining Farley to include all successors. Yes. So a successor, which would include, I take it, somebody who bought the business lock, stock, and barrel, would be a successor. Right. Therefore, if Kraft buys the business lock, stock, and barrel, they are a successor, they own everything, including all rights under this agreement, without regard to 8.4, correct? Yes, under that scenario. Because they would own all the listed assets of 8.4 under that scenario. The question comes down to, what is a successor? And can you lose that status? You absolutely can lose the status. Kraft, as it sits here today, does not claim that it is a successor under this agreement. It parceled some of those listed assets, some of the assets that was Farley, they parceled them off. They haven't parceled the trademark off because they did that earlier, or the goodwill because they did that earlier, but they took the rest and they sold it to Kellogg. And now they're not a successor. So you can, in fact, lose successor status. The question is, when did they lose successor status? They certainly lost it by their own admission when they sold the assets that remained of their own food business to Kellogg. We claim that they lost that successor status in 2002 when they sold it to Catterton. And I need to save some time for rebuttal, but I just direct the court, when you get the chance to go to the red brief, at page 15, which is where their argument starts. It goes from page 15 to page 21, and they don't cite a single case for the proposition. Not a single case for the proposition that once a successor, always a successor. They only cite two cases in there. One is the case we cite favorably. They try to distinguish it. And another is for this general proposition that forfeitures are disfavored. There's no case that they cite that's even close to the facts in this case that supports their proposition that once a successor, always a successor. Because there is no case. They lost successor status. They lost it when they decided to take what was borrowed and break it up into pieces and make money doing it by selling it to a private equity firm. And they should not now be able to come in and claim that they get the benefit of the entire agreement when the bargain was, Farley would stay together. Okay. We'll stay in this. Okay. Ms. Herseth. Thank you very much, Your Honor. May it please the court. General Mills' repeated reference and reliance on Article 8.4 sows real confusion here. Article 8.4 is not a forfeiture provision. Article 8.4 does not provide when or if a successor ceases to be a successor. Article 8.4 is strictly concerned with the issue of when a successor such as Kraft was can transfer the rolled food products business of Farley together with the protections of the settlement agreement. And that article provides that it may transfer the protections of the settlement agreement but only if it transfers the, quote, entire rolled food products business. It's a limitation on assignment of the benefits of the settlement agreement. It does not in any manner suggest or address that a successor, once a successor, can lose that status. It does not once suggest that a successor, an admitted successor, that sells, as in this case, what is essentially a single asset belonging to the Farley Candy Company, its trade name and associated goodwill, forfeits just like that all of the benefits of the settlement agreement. And not only is this not in 8.4, Mr. Schuch says over and over, and General Mills says in his brief over and over, this is what the agreement provides. It's nowhere in the agreement. Nowhere in the agreement does it provide that the sale of any asset, whether it's the Farley brand name or a factory or a piece of office equipment or a particular trademark, will result in a forfeiture of benefits under the settlement agreement. So this case is very straightforward. It's one that invokes principles of contract interpretation that are virtually universal. It involves the law that accords a forfeiture, which is virtually universal. In order for there to be a forfeiture, a contract has to contain a clear expression. It has to give warning to Kraft that by selling an asset, poof, its rights are going to go away. Kraft could not look at that settlement agreement and discern from the base of that settlement agreement that the sale of the Farley trade name, not a rolled food products trade name, but the sale of the Farley brand name, would result in a forfeiture of all of the benefits of that agreement. So I take it that your position is that this case is controlled by two things. One is Section 1.6 of the agreement, which invokes the – it seems to invoke the common law of successorship and to the common law of successorship. And therefore, you would say as long as under common law principles, Kraft is a successor, that nothing in the rest of the agreement says that Kraft loses anything. That's quite right. So that's in a nutshell, I guess. That's quite right. And if the parties intended otherwise, and there are many, many statements and briefs about what the parties intended, they intended this to be personal with Farley and so on. If they really intended that, you would think that it would be so much as hinted at. Let's assume you're right about that. Why is somebody who sells the entire business except for one contract right of the business, why does that party remain a successor? What in the law of successorship? Because it still owns that contract right. It's still a successor. Well, suppose it doesn't own that contract right, but it owns a contract right to use the swimming pool at the local YMCA. Is it still a successor to that corporation, as opposed to the party that just purchased it, everything except the contractual right to use the swimming pool for its employees? I think it is a few. Are they both successors? There can be multiple successors. I guess the problem is that Mr. Schutz sort of challenges you on this, because he says you don't cite any cases for the proposition that Kraft really is a successor. He says that you can't simply sell everything but the tiniest smidgen of a business's rights, and then quote right that, and then claim that you continue to be a successor. Can you point us to something that says that's not right? Well, I don't have a case to cite that says that's not right. Mr. Schutz has a case to say that that is right. But under the common law of successors, there can be multiple successors. A successor by merger obtains the assets of the company and all the rights and liabilities of the company. Yeah, it's the other way around, though. It's the investiture issue that's the problem, isn't it? Well, it is. It seems to be. But if a company thereafter sells three business units and keeps one, isn't it still a successor with respect to that business unit? Unfortunately, I have to ask the questions not to answer. It's rhetorical. I understand. Should we make anything of the fact that the covenant not to sue, Exhibit B at page 496, obviously provides for the release by General Mills of Harley and all of its successors for that implementation? I do believe so. And, again, this goes to the issue of forfeiture and fair notice to a successor of Harley Candy Company, which Kraft, again, admittedly was. There was no question. And I might point out that the complaint does not allege that Kraft sold everything but the rights to sell it. It alleges that it sold the Harley, Brady, and Goodwill. That's all there is. Yeah, I would have thought your answer to that question would be that we don't have to reach a difficult time with that. And I think that's right, because they allege that we sold what is essentially one asset When Kraft had to deal with Katz and what they keep of Harley's business besides the covenant not to sue? The World Food Products business, which was the subject of the settlement agreement. They sold the caramel and confectionery business. And the company that exists now that has, in part, Harley's name is Harley and Saddler's Candy Company, obviously not the same corporation. So what we kept were all of the other World Food Products assets. And we don't believe that the brand name was part of those assets. We just sold the Harley brand name to go with the confectionery business, caramels, what have you. Did Kraft have a separate World Food business aside from what was obtained from Harley? I don't believe so, no. Now one other question, sort of on the periphery, perhaps even the periphery at best, but I'm kind of curious because it's sort of lurking here. The Kellogg sale, is there... If that sale, that sale does require, I take it, the invocation of 8.3 and 8.4. Absolutely, you're right. And if that sale is valid, then presumably Kraft does lose its protection of the ring. Agreed. So I take it that there's no argument that any infringement occurred on the part, at least of Kraft, after the transfer at Kellogg? Not that I'm aware of. Because... Otherwise... After Patterson and up to Kellogg. That's what we're talking, that's the window. Correct, and for your Honor's information, I believe it's set forth in the wrist, there is another lawsuit currently pending in the federal court in Minnesota that addresses just that, which is the assignment and sale of the World Food Products business from Kraft to Kellogg in 2005. But that doesn't affect the patent liability issue, I take it, because Kraft, whatever Kraft was doing prior to the sale to Kellogg, is no longer doing, at least that General Mills is arguing. Correct, that's correct. Just a few... I mean, obviously I'm happy to answer any questions that the panel has.  always a successor, there has been a suggestion that there is some ambiguity in the term successor. A footnote in the brief, but obviously it's been admitted and admitted over and over again that Kraft was a successor. Well, for a while. There's no doubt they were for a while, but the tough question becomes really all the way through. And they answer that, there's decided disagreement. Well, just looking at the implications, though, of General Mills' argument, and I think it's important to consider those implications, what they're really saying is that you can be a successor through a merger, through acquisition, through an asset purchase, however, and that you can sell a single asset and lose your status without having any fair warning in the agreement that conferred the protections on you. That is an extremely illogical and plausible and, from a business perspective, nonsensical result. But that is, in essence, what they're arguing because they've alleged in this complaint that the sale of, in essence, one asset, not of the World Food Products Division, but of Farley Candy Company as a whole, divested it of its rights under a settlement agreement which was committed only to the World Food Products business. In terms of the claims that this agreement was personal to Farley, that's something that's stated over and over again both in the briefs and, I believe, in oral argument. I think the fact that Kraft was admittedly a successor is probably the best evidence that that argument isn't plausible and, if 8.4 is relevant at all, 8.4 itself states that Farley can sell its World Food Products business along with the protections of the settlement agreement to a third party so long as it does it in a bundle with that business unit. So any idea that it was the party's intent that it would forever be Farley is contradicted by 8.4 and, furthermore, there's no hint in this agreement that Kraft or any other successor was required to even use the Farley name. It could have the Farley brand name but never use it. So the logic behind the idea that somehow the sale of that brand name caused the rights under this agreement to evaporate is simply absent. Does the panel have any other questions? So Farley, the alleged infringement was by Farley and the World Food Business, is that right? Pardon me? The alleged infringement that led to the agreement and the government not to sue Farley, infringing on General Mills' patent. I believe there were also counterclaims by Farley and its competitors. What was Farley made of? Fruit rolls. Fruit roll food. Yes. And so after the Ketterman transaction, Kraft continues to engage in the World Food Business. Correct. Right. Selling the World Food product, which they claim isn't infringing because they became 100% successor when they complied with the accord. I think it's not as if Kraft had sold off Ketterman to World Food Business. No. Kraft did not sell World Food Business to Ketterman and it remained a successor because it retained the World Food Business and the settlement agreement. Now, let me make sure of something because this has been raised by Judge Fletcher's question and I think we may have a misapprehension here which I need to clear up. When Kraft obtained Farley, there was not compliance with 8.4, correct? Correct. Right. It was a straight successorship. Yes. Again, I get back to this 1.6 versus 8.4. That was simply an exercise of rights that had been preserved to the parties under 1.6 and didn't trigger 8.4. The two rub up against one another but I understood that that was not an instance unlike the Kellogg transaction in which 8.4 was at issue, right? It's not like the Kellogg transaction where there was an attempt to sell the... Well, did Farley give Ketterman a notice of... Yes, they did. Oh, they did? Yes. Of Kraft? Yes. Farley was obligated under 8.4b, right? There were a series of transactions, of bankruptcy sales, mergers, etc. and they were all transactions of which General Mills was notified. Oh, so you... Well, maybe I once again confused you. Is it your position that 8.4, the requirements of 8.4 apply to those transactions that resulted in the transfer of Farley to Kraft? I beg your pardon? Could you repeat the question? Yes, sure. In other words, what... Farley exists. Farley is transferred through a series of transactions as you just described to Kraft. Correct. Was there a requirement that General Motors... General Mills be advised of those transactions and that transfer? Or was that simply a transfer of all rights that simply reflects a successorship as to which 8.4 would not be applicable? Well, I'm not sure whether it was required, but it was accepted by General Mills and General Mills was notified. I see. Doesn't 8.4b say Farley must provide General Mills with a 68 written notice prior to the transfer of the rights and opposition to those agreements? It does. It does. And they would. And that would certainly suggest in order for Farley to invest Kraft with the benefits, among other things, of the government not to sue, that notice would have to be given. Correct. But there's no question, again, it's admitted that Kraft did become a successor of the settlement agreement via the provision of 8.4. But if that's true, now I want to make sure that my notion that 1.6 gives an independent basis for concluding that there are rights that transfer quite apart from whether the more restrictive terms of 8.4 allow a transfer. 8.4 says that in order for there to be a transfer of rights in the agreement, you must transfer the entire world food product business without limitation, all assets, goodwill, and trademarks to the party to whom the rights and obligations would be assigned. That would be, I would think, more restrictive than the normal law of successorship where you could remain, you could be a successor even if you didn't convey all the rights and all the interests in the property that's at issue. Wouldn't that be true? It may be more restrictive, it appears more restrictive, and I agree that it does rub up against 1.6. So which governs? 8.4, in other words, should we be saying, well, anything that doesn't satisfy 8.4 cannot be regarded as a valid successorship under 1.6? Well, I don't think in this case it matters, and here's why. Okay. Because if there has been a valid assignment to Kraft pursuant to 8.4, which General Mills has admitted repeatedly that there has, and indeed has permanently alleged in their briefs, then Kraft becomes a successor to the settlement. Okay. Okay. Thank you. Mr. Schutz. Thank you, Your Honor. The analysis needs to be from the covenant not to sue back to the agreement. Covenant not to sue says Farley and its successors are off the hook. So what's Farley? You go back and 8.4 informs us what Farley is for purposes of this. It's the role of food businesses. They didn't sell Kraft, that is, did not sell just any of the assets. They sold listed assets. When we look at Farley and its successors, what's that? Let's go to the agreement. 8.4 says, hey, you can parcel stuff off as long as you sell the entire world food business including trademarks and goodwill. And it's undisputed that the relevant trademarks and goodwill of the world food business were parceled off in 2002. And so that's why they lost successor status. They sold listed assets. So what kind of rule, because this is at some point a case of first impression coming out of this court. And there is some guidance. We do cite a couple of cases coming out of Minnesota on what's a successor. And if you don't have all the rights that were there originally, you're not a successor. So if there are listed assets in an agreement, can someone still be a successor to that agreement even though those listed assets that the parties negotiated for have been parceled off? That rule would create chaos in the marketplace. We had a bargain. We had a bargain. Farley's off the book. Any successor's off the book. And what's a successor? The agreement's pretty clear on what a successor is. It's not some other aspect of Farley. It's the world food business of Farley. And that was bargained for. They could have said, wait a minute, we don't want that restriction in there. It's a bargained for restriction. Farley is what's the world food business plus relevant trademarks and goodwill. They decided to parcel those off. And now they want to come into court and say, we can't parcel off listed assets that the parties bargained for. And still we can't. But we stay in the world food business and we continue to sell what would be an infringing product. And we think we were a successor to Farley. We think we still should be. That's the other side of it. So if they're selling listed assets, what if they had sold some additional listed assets? What if they would have kept the trademarks? They stayed in the world food business. They did. So how do you draw that line so that people down the road reading the court's opinion have some idea of what assets can be sold and what not? And I don't think they're taking this position, but what if they have sold it? Well, the contract could have been written in such a way to have an airtight lockdown for your side. It would have been easier to write in there. Well, in hindsight, a lot of things are easy to write in, Your Honor. That's correct. To the extent that there's any amputation. I mean, the question is what you're putting to us. So who's shocked the more? Kraft and McClure's that kept the world food business and continued to sell the infringing product. Suddenly it's guilty of infringement even though they had a covenant not to sue. Or General Mills, vastly surprised, right? That a piece of the business that doesn't really relate in a significant way to the world food business has been hired off by Kraft. Well, Kraft looks at the agreement. It's not a long, complicated agreement. It's pretty clear the world food business includes these listed assets. They decide, hmm, there's money on the table from this private equity buyout firm. We're going to take that money, and we're going to take our chances. So your position then is that if Kraft succeeds in the world food business, engages in the world food business, and then after a period of time decides that it wants to shut down one of its two plants, continues in the world food business without that one plant, sells that plant to somebody else, and they're going to use that plant to make automobiles or something, then that's it. They've lost the benefits of this agreement. You do not have to go there, Your Honor, and here's why. They didn't sell some assets that got to be used for something else, all right? They sat and looked at assets that were paid for by another company that still operates under the name Farley, that's still in the candy and confection business out there. They did not have to do that. And they chose... This doesn't make whether the party that succeeds to these assets is in the candy business selling caramels or chocolates or something else. We're talking about the world food business. And the world food business was defined by an agreement between the parties to include those trademarks in goodwill. So the world food business was defined. There's no excuse for what it is. And they decided that even though that's the way it had been defined, they were going to take those defined listed assets and parcel some of them off. And that divests them from their success. Thank you. Thank you. Thank you. Thank you. Case is submitted.